**UNITED STATES**

**v.**

**Sergeant Jesus M. OTERO, FR 077–50–8390 United States Air Force.**

**ACM 26334.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 1 June 1987.

Decided 25 March 1988.

Appellate Counsel for the Appellant: Colonel Leo L. Sergi and Captain Laurence M. Soybel.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Lieutenant Colonel Robert E. Giovagnoni, Major Carole W. Hanson and Captain Carla Walgenbach.

Before FORAY, MICHALSKI and MURDOCK, Appellate Military Judges.

DECISION

FORAY, Senior Judge:

Appellant contends that the general court-martial that convicted him of numerous offenses of conspiracy to commit larceny, larceny, and soliciting others to commit larceny [1] and which sentenced him to a dishonorable discharge, confinement for five years, forfeiture of $200.00 per month for sixty months, and reduction to the grade of airman basic was without jurisdiction to do so. His specific claim is:

THE COURT LACKED JURISDICTION TO TRY THIS CASE BECAUSE IT WAS REFERRED TO A COURT–MARTIAL WHICH WAS NOT IN EXISTENCE AT THE TIME OF REFERRAL.

The reference to trial in this case, which was copied verbatim into the record of trial, is dated 16 April 1987. It indicates that the charges and specifications were ordered to trial by the convening authority before a general court-martial convened by Special Order AC–32, Headquarters, United States Tactical Fighter Weapons Center (TAC), dated 16 April 1987. However, Special Order AC–32, which is also included in the record of trial, is dated 17 April 1987.

According to appellant, R.C.M. 601(a) defines "referral" as an order of a convening authority that charges against an accused will be tried by a *specified court-martial.* He adds that the Discussion to R.C.M. 601(a) states that a referral requires three elements: (1) a convening authority authorized to convene the court-martial; (2) preferred charges which have been received by the convening authority for disposition; and (3) a court-martial convened by that convening authority or a predecessor. Appellant further adds, as to the latter element, that R.C.M. 504 states that a convened court-martial is one which is created by a convening order of the convening authority. Appellant reasons that since the court-martial which was created by the convening authority in Special Order AE–32 on 17 April 1987, was not in existence on the date charges were referred against him on 16 April 1987, the third requisite of a refer-ral is lacking. As a result of the charges against him being referred to trial by a court-martial not yet in existence, appellant claims the charges were improperly referred, thus, the court-martial which tried and convicted him lacked jurisdiction to do so.

In *United States v. Fields,* 17 M.J. 1070 (A.F.C.M.R.1984), *pet. denied,* 19 M.J. 56 (C.M.A.1984), we held that the procedural provisions regarding referral of cases to trial by court-martial found in M.C.M., 1969 (Rev.), paragraphs 33*j* and 37*c* (1) were not statutory and that, normally, a departure from the procedures set forth in the Manual for customary usage does not constitute a defect of jurisdictional proportions. In support of this holding we cited *United States v. Blaylock,* 15 M.J. 190 (C.M.A. 1983); *United States v. Simpson,* 16 U.S. C.M.A. 137, 36 C.M.R. 293 (1966); *United States v. Emerson,* 1 U.S.C.M.A. 43, 1 C.M. R. 43 (1951).

In *Fields,* the appellant also claimed that the court-martial which tried him was without authority to do so. The charges against him were referred to a court-martial created pursuant to Special Order AE–20. When the court-martial convened to hear his case he moved for a continuance in order that his request for an individual military counsel could be acted upon. When the case resumed, trial counsel announced that the court was convened pursuant to Special Order AE–20 "as amended" by Special Order AE–29. Special Order AE–29, which was made part of the record of trial, revealed that it was not an amendment to Special Order AE–20 but was, instead, an order withdrawing the case from the original court and convening another court to try the case as provided for by M.C.M., 1969 (Rev.), paragraphs 37*c* (1), 56*a* and *b,* and Appendix 4a. Additionally, the "savings clause" in Special Order AE–29 contained a statement withdrawing all cases convened pursuant to "Special Order AE–29", instead of AE–20, which were in the hands of trial counsel, and bringing them to trial before the court convened therein. We found the savings

1. Articles 81, 121, and 134, U.C.M.J., respectively.

clause in Special Order AE–29 to be the result of careless drafting and review on the part of those responsible for its preparation and publication. We further found this to be a procedural error and not one of jurisdictional proportions mandating reversal.

■ We find that our holding in *Fields* is equally applicable here. The discrepancy between the date attributed to Special Order AC–32 in the referral portion of the charge sheet and the actual date printed on the order likewise appears to be nothing more than the result of careless draftsmanship and review on the part of those responsible therefor. We are convinced that R.C.M. 601(a) has been complied with and all the jurisdictional requisites of a general court-martial set forth in R.C.M. 201(b) have been met. Accordingly, we find that the error here was not a jurisdictional defect. *United States v. Blaylock, supra; United States v. Simpson, supra; United States v. Emerson, supra; United States v. Fields, supra; United States v. Shepardson,* 17 M.J. 793 (A.F.C.M.R.1983).

■ Having found that the error regarding the referral of this case to trial not to be jurisdictional, we must next determine whether the error otherwise requires reversal. The error must be tested for prejudice under Article 59, U.C.M.J. Our determination of this question is governed by the provisions of R.C.M. 905(e). That rule makes it clear that any failure to raise a defense or objection, before pleas are entered, based on defects (other than jurisdictional defects) in the referral of charges shall constitute waiver. We find that waiver of the defect in the referral of the charges to have occurred in this case, as at no time prior to the entry of the pleas did appellant raise any objection to that defect. *United States v. Murray,* 25 M.J. 445 (C.M.A.1988): *United States v. Platt,* 21 U.S.C.

M.A. 16, 44 C.M.R. 70 (1971); *United States v. Emerson, supra.*

Although not assigned as an error by appellant, two events occurring during the post-trial processing of this case merit our comment and action. These are the ambiguous initial action of the convening authority and the unauthorized method employed to correct the ambiguity.[2]

Prior to trial the appellant and the convening authority entered into an agreement wherein appellant, among other considerations, agreed to waive his right to plead not guilty in return for the convening authority's agreement not to approve any sentence to confinement in excess of three years. Since the adjudged sentence to confinement for five years exceeded the limits of the pretrial agreement, the convening authority, on 4 September 1987, attempted to execute his part of the agreement by publishing the following action:

> In the case of SERGEANT JESUS M. OTERO, FR007–50–8390, United States Air Force, NJOTF4PM, only so much of the sentence as provides for confinement for 3 years, forfeiture of $200 per month for 60 months, and reduction to airman basic is approved, and except for the dishonorable discharge, will be executed. The Correction Facility, Fort Lewis, Washington 98433 is designated as the place of confinement.

This initial action, on its face, allows the argument that the convening authority did not approve the adjudged sentence to a dishonorable discharge.[3] This ambiguity was discovered after the action had been published in the initial promulgating order announcing the results of the trial and after the appellant had been officially notified of the action. The discovery prompted the convening authority to withdraw his initial ambiguous action and substitute therefor one which approved the dishonorable discharge along with the accessory

---

**2.** Appellate Government counsel have commented on the ambiguous initial action of the convening authority and the apparent corrective action taken by him in their Reply To Assignment Of Errors.

**3.** The persons responsible for the drafting and review of the action failed to follow the guidelines found in Forms For Action, M.C.M.1984, Appendix 16, A–16, Form 12.

penalties he had previously approved.[4] The substituted action was dated 26 December 1987.

A post-trial affidavit submitted by the staff judge advocate to the convening authority states that all discussions had with the convening authority regarding the sentence in the case included approval of the sentence to the dishonorable discharge and the failure of the initial action to reflect that approval was "an obvious typographical error". The Staff Judge Advocate's Recommendations submitted to the convening authority after trial contained the recommendation that the sentence to a dishonorable discharge be approved. The staff judge advocate's recommendation, his affidavit, and the fact that the convening authority did attempt to remedy the error in the initial action by withdrawing it and substituting it with another clearly show that the convening authority's initial intention was to approve the sentence to dishonorable discharge.

■ We find that the initial action of the convening authority, although ambiguous, may be reasonably interpreted to indicate that he intended to approve the sentence to dishonorable discharge. While he did not explicitly approve the sentence to a dishonorable discharge, he did act to insure that it would not be executed along with the other elements of the sentence. *United States v. Loft,* 10 M.J. 266 (C.M.A.1981). *United States v. McDaniel,* 7 U.S.C.M.A. 56, 21 C.M.R. 182 (1956). As the Court of Military Appeals pointed out in *McDaniel,* "a writing should be construed to give meaning and effect to all its provisions" and "neither military nor civilian law demands rigid adherence to abstract form".

■ We further find that the substituted action taken by the convening authority was unauthorized at that point in the post-trial process. Pursuant to R.C.M. 1107(f)(2), a convening authority may recall and modify an action taken by him at any time "before it has been published or before the accused has been officially notified." The substituted action in this case was taken by the convening authority well after his initial action was published and the accused officially notified. Accordingly, the substituted action is set aside. Pursuant to R.C.M. 1107(a), we may instruct a convening authority to withdraw an incomplete, ambiguous, or erroneous action and substitute a corrected action for the original action. Accordingly, we return the record of trial to The Judge Advocate General for remand to the convening authority for remedial action not inconsistent with this opinion.[5]

We find that the assignment of error submitted by appellant pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A. 1982) to be without merit.

MICHALSKI and MURDOCK, Judges, concur.

---

4. The substituted action is not appended to the record of trial at the appropriate place. At the time of the substituted action the record of trial had already been referred to this Court by The Judge Advocate General pursuant to Article 66(b), U.C.M.J.

5. The results of trial and the substituted initial action of the convening authority should be promulgated in an order in accordance with the provisions of R.C.M. 1114 and A.F.R. 111–1, Chapter 9, and the previously published initial promulgating orders should be rescinded.